**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARICRUZ MARISOL ROJAS-ESPINOZA; ROBERT SALVADOR-GOMEZ; DAVID SALVADOR-ROJAS; KORINA SALVADOR-ROJAS, | No. 24-7536 |
| | Agency Nos. |
| | A246-606-483 |
| | A246-606-482 |
| *Petitioners*, | A246-606-484 |
| | A246-606-485 |
| v. | |
| PAMELA BONDI, Attorney General, | ORDER AMENDING ORDER DENYING STAY OF REMOVAL |
| *Respondent*. | |

Filed October 24, 2025
Amended November 25, 2025

## ORDER

The order filed on October 24, 2025 is amended by (1) inserting, in a new line above "PER CURIAM" at the beginning of the order, the following: "Before: Ryan D. Nelson, Daniel P. Collins, and Lawrence VanDyke, Circuit Judges." and (2) deleting the double-asterisked footnote following "PER CURIAM". An amended version of the October 24, 2025 order, reflecting these changes, accompanies this order. The stay of the October 24, 2025 order, as set forth in the November 10, 2025 order of the En Banc Coordinator, is not affected by this amendment and remains in effect.

# SUMMARY[*]

## Immigration/Stay of Removal

In an order entered by the Clerk at the direction of the assigned three-judge panel, the panel denied a motion for a stay of removal, concluding that Petitioners had not made a showing of a strong likelihood of success on the merits or a probability of irreparable harm, and that the public interest considerations in this case weighed heavily against a stay.

Applying the stay factors set forth in *Nken v. Holder*, 556 U.S. 418 (2009), the panel concluded that Petitioners failed to show a likelihood of success on the merits, where they filed a barebones motion merely asserting in conclusory fashion that their appeal would raise substantial and novel issues of law as to whether the Board of Immigration Appeals applied the law correctly to their case, failed to file a supplemental stay motion as permitted by the court's General Orders, and failed to reply to the Government's opposition to the motion or to otherwise seek leave to supplement their motion. Petitioners also failed to establish irreparable harm. Under *Nken*, the burden of removal alone cannot constitute the requisite irreparable injury. Rather, an alien seeking a stay of removal must show irreparable harm that is specific to his or her case, as opposed to a reason that would apply equally well to all aliens and all cases, and must show that an irreparable injury is the more probable or likely outcome, a showing Petitioners failed to make here, even considering the more developed record in the fully briefed petition for review. Finally, the public interest weighed

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

heavily against a stay, and Petitioners had not made a sufficient showing on the merits to overcome the heavy weight of that public interest factor.

The panel further explained that Petitioners exploited a defect in this court's internal procedures and thereby secured an unwarranted stay of their removal for the last 10 months, and that the public interest in putting a prompt end to Petitioners' misuse of the court's stay processes was not mitigated by the fact that this court itself erred in creating the process that Petitioners abused. Specifically, by filing their barebones stay motion, Petitioners secured an automatic administrative stay, pending resolution of that stay motion, by virtue of this court's General Order 6.4(c)(1) ("Upon the filing of an initial motion or request for stay of removal or deportation, the order of removal or deportation is temporarily stayed until further order of the Court."). Thereafter, consistent with what has become the widespread practice of this court's internal operations, Petitioners' opposed stay motion was held by the Clerk's Office until it could be presented to the merits panel that would be assigned after the completion of briefing. The result was that the supposedly "temporary" stay remained in place for 10 months—and a full seven months after the Government filed its opposition. The panel wrote that this practice squarely violates *Nken*'s instruction that courts may not reflexively hold a final order in abeyance pending review. Once the opposed stay motion was fully briefed, it should have been presented by the Clerk's Office to the next available motions panel, and going forward, that is the practice that must be followed in disposing of fully briefed opposed stay motions.

This order will be amended to include the identity of the assigned three-judge panel when it is publicly disclosed on November 24, 2025.

## COUNSEL

Murray D. Hilts, Law Offices of Murray D. Hilts, San Diego, California, for Petitioners.

Matthew A. Spurlock, Trial Attorney; John S. Hogan, Assistant Director; Office of Immigration Litigation; Brett A. Shumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## ORDER

Before:  Ryan D. Nelson, Daniel P. Collins, and Lawrence VanDyke, Circuit Judges.

PER CURIAM:

Petitioners Maricruz Marisol Rojas-Espinoza, her domestic partner Robert Salvador-Gomez, and their two minor children David Angel Salvador-Rojas and Korina Salvador-Rojas, who are all citizens of Peru, have moved for a stay of their removal pending disposition of their petition for review challenging a Board of Immigration Appeals ("BIA") ruling upholding a decision by an Immigration Judge ("IJ") ordering their removal to Peru and denying their

requests for relief from removal. We deny the motion for a stay of removal.

# I

## A

Petitioners unlawfully entered the United States without inspection near Sasabe, Arizona, in early January 2023. In May 2023, the Department of Homeland Security instituted removal proceedings by filing and serving notices to appear that charged Petitioners with being removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as aliens who are present in the United States without having been admitted or paroled after inspection by an immigration officer. *See* 8 U.S.C. § 1182(a)(6)(A)(i). At a hearing before the IJ, Petitioners admitted the charge and conceded removability.

The two adult Petitioners filed separate applications for asylum, withholding of removal, and relief under the Convention Against Torture ("Torture Convention"), with their two children seeking derivative relief solely with respect to their father's asylum request. *See Ali v. Ashcroft*, 394 F.3d 780, 782 n.1 (9th Cir. 2005) (noting that, unlike asylum, derivative relief is not available with respect to withholding of removal or relief under the Torture Convention). The applications were based on nearly identically worded declarations from the two adult Petitioners recounting the same underlying events. In addition, Rojas-Espinoza testified concerning those events at a hearing before the IJ.

Based on that evidence, the IJ made the following findings of fact. Rojas-Espinoza's brother was physically attacked in February 2021 by members of a union. Rojas-

Espinoza did not know why he specifically was threatened, but she believed that it related to a dispute among the workers within the union.   Nearly two years later, in December 2022, two hooded men attacked Rojas-Espinoza, asking for her brother and threatening to kill her.   They choked her and attempted to rape her, but police appeared on the scene and the two men fled.   Ten days later, Petitioners moved to Rojas-Espinoza's cousin's house in Lima.   Rojas-Espinoza claims that, before leaving for Lima, she filed a police report about the assault against her.   Six days after their arrival in Lima, Petitioners' family found a threatening note outside her cousin's house, together with a bullet. Rojas-Espinoza again claimed that she reported this incident to the police.   Shortly thereafter, Petitioners left for the United States.   Since their arrival in the United States, Petitioners have received no further threats and their "family in Peru has not been threatened."

The IJ denied Petitioners' applications for relief and ordered them removed to Peru.  Petitioners appealed, and the BIA upheld the IJ's decision.  The BIA concluded that, even if the harm Rojas-Espinoza experienced rose to the level of persecution, Rojas-Espinoza failed to establish the requisite connection to a protected ground for purposes of either asylum or withholding of removal.  *See Umana-Escobar v. Garland*, 69 F.4th 544, 551 (9th Cir. 2023) ("A nexus between the harm and a protected ground is a necessary element of asylum and withholding of removal."); *see also* 8 U.S.C.  § 1101(a)(42)(A) (stating that the protected grounds for purposes of asylum are "race, religion, nationality, membership in a particular social group, or political opinion"); *id*.  § 1231(b)(3)(A) (same for withholding of removal).

Specifically, the BIA held that Petitioners' proposed social groups—"witnesses to organized crime," "those opposing gang operations," and "kinships who are targeted by gangs"—were not cognizable social groups for purposes of the INA, because they "lack[ed] sufficient particularity and social distinction." In addition, the BIA alternatively upheld the IJ's conclusion that Petitioners' past or feared mistreatment was not on account of their claimed membership in these particular social groups. The BIA concluded that Rojas-Espinoza "was an unfortunate victim of criminals in Peru who appear to have had personal issues with her brother" and that this was insufficient to establish a nexus to her proposed social groups for purposes of either asylum or withholding of removal. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 358–59 (9th Cir. 2017) (holding that, for purposes of asylum, the applicant must show that the protected ground constitutes "one central reason" for the alleged persecution, but that, for withholding of removal, the applicant need only show that a protected ground constitutes "a reason" for the persecution).

The BIA also upheld the IJ's denial of the adult Petitioners' applications for relief under the Torture Convention. As the BIA explained, the applicants had failed to establish that they had suffered past torture or that they would likely experience future harm rising to the level of torture, much less "with the requisite degree of state action." In reaching this conclusion, the BIA expressly considered both Rojas-Espinoza's testimony and the country conditions evidence that had been submitted concerning Peru.

**B**

On December 13, 2024, Petitioners filed a timely petition for review in this court, and in the same document, they

moved for a stay of removal pending resolution of the petition.  Pursuant to this court's General Order 6.4(c)(1), the filing of this motion automatically resulted in a temporary administrative stay pending resolution of that motion.  *See* Ninth Cir. Gen. Order 6.4(c)(1) ("Upon the filing of an initial motion or request for stay of removal or deportation, the order of removal or deportation is temporarily stayed until further order of the Court."); *see also De Leon v. INS*, 115 F.3d 643, 644 (9th Cir. 1997) (adopting, in light of the "large number of stay requests" presented to this court in immigration cases, a similar practice of automatically granting administrative stays "until the court rules on the stay motion").  Although General Order 6.4(c)(2) allows a petitioner in certain circumstances to file a "supplemental motion" in support of such a stay request, no such supplemental motion was filed by Petitioners here.

In accordance with the schedule established by the Clerk, the Government timely filed the certified administrative record on December 27, 2024 and timely filed its opposition to the stay motion on February 11, 2025.  Any reply by Petitioners to that opposition was due on February 18, 2025, *see* FED. R. APP. P. 27(a)(4); Ninth Cir. Gen. Order 6.4(c)(4), but none was filed.  The stay motion was thus fully briefed by February 18, 2025.

Rather than present the stay motion to the next motions panel of this court for decision, *see* Ninth Cir. Gen. Order 6.2(a) (establishing monthly motions panels of judges), the Clerk's Office held the motion for seven months until the completion of merits briefing concerning the petition for review.  *Cf.* Ninth Cir. Gen. Order 6.4(c)(6) (stating that merits briefing shall proceed, regardless of whether a stay motion is filed).  On September 21, 2025, the Clerk

calendared this case for argument before a merits panel in San Francisco on December 2, 2025. At approximately the same time, the case materials for this matter, including both the merits briefing and the stay motion, were forwarded to the assigned judges on the merits panel for our consideration.

## II

We begin by reviewing the standards that govern stays of removal pending judicial review. We thereafter turn to applying those standards to the original motion papers that were presented to us, before then considering whether the more complete record now available warrants a different conclusion.

## A

The power of an appellate court to stay an order pending review "has historically been justified by the perceived need 'to prevent irreparable injury to the parties or to the public' pending review." *Nken v. Holder*, 556 U.S. 418, 432 (2009) (citation omitted). Resolving an appeal "takes time," and the authority to grant stays helps to resolve the resulting "dilemma" as to "what to do when there is insufficient time to resolve the merits and irreparable harm may result from delay." *Id*. at 421, 432. Prior to 1996, Congress resolved that dilemma, in the context of judicial review of removal orders, "through a provision providing most aliens with an automatic stay of their removal order while judicial review was pending." *Id*. at 424; *see* 8 U.S.C. § 1105a(a)(3) (1994 ed.) ("The service of the petition for review . . . shall stay the deportation of the alien pending determination of the petition by the court, unless the court otherwise directs."). That prior "presumption of an automatic stay" was predicated on the fact that the pre-1996 statute stated that an alien's removal during the pendency of a petition for review would *bar*

judicial review of the removal order.  *Nken*, 556 U.S. at 424–25; *see also* 8 U.S.C. § 1105a(c) (1994 ed.) ("An order of deportation or of exclusion shall not be reviewed by any court . . . if [the alien] has departed from the United States after the issuance of the order.").  That is, in order to avoid the loss of judicial review associated with execution of the removal order, Congress directed that aliens would presumably receive an automatic stay upon the filing of a petition for review.

In 1996, however, Congress drastically altered the legal landscape with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").  *See* Pub. L. No. 104-208, div. C, 110 Stat. 3009-546 (1996).  "[T]o allow for more prompt removal," IIRIRA "inverted" the prior rules by "lift[ing] the ban on adjudication of a petition for review once an alien has departed" and "repeal[ing] the presumption of an automatic stay, and replac[ing] it" with the opposite presumption that an alien's removal will *not* be stayed unless the court orders otherwise.  *Nken*, 556 U.S. at 424–25.  Thus, under § 242(b)(3)(B) of the INA, the filing and service of a petition for review in a court of appeals "does *not* stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise."   8 U.S.C. § 1252(b)(3)(B) (emphasis added).

The Court in *Nken* held that, in determining whether to affirmatively grant a stay of removal in any given case, a court of appeals must apply the "traditional stay factors." 556 U.S. at 426.  Those factors are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

> irreparably injured absent a stay; (3) whether
> issuance of the stay will substantially injure
> the other parties interested in the proceeding;
> and (4) where the public interest lies.

*Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Where, as here, the Government is the opposing party, the last two factors—"the harm to the opposing party" and "the public interest"—"merge" together. *Id*. at 435. In applying these factors, we must keep in mind that "[a] stay is not a matter of right, even if irreparable injury might otherwise result," and that the alien seeking a stay of removal "bears the burden of showing that the circumstances justify an exercise" of "judicial discretion" in his favor. *Id*. at 433–34 (citation omitted); *see also id*. at 437 (Kennedy, J., concurring) (noting that this is a "demanding standard").

We have construed the *Nken* four-factor standard as establishing a "continuum" in which the requisite showing on the merits depends upon the strength of the alien's showing of irreparable injury and the potential harm to the public interest:

> [A] petitioner seeking a stay of removal must
> show that irreparable harm is probable and
> either: (a) a strong likelihood of success on
> the merits and that the public interest does not
> weigh heavily against a stay; or (b) a
> substantial case on the merits and that the
> balance of hardships tips sharply in the
> petitioner's favor. As has long been the case,
> these standards represent the outer extremes
> of a continuum, with the relative hardships to
> the parties providing the critical element in

> determining at what point on the continuum a
> stay pending review is justified.

*Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011)
(simplified).

**B**

Having reviewed these general standards, we consider
how they apply to the fully briefed motion for a stay that has
been presented to us.

As a threshold matter, we reject Petitioners' assertion
that they are entitled to a stay under "INA 106(a)(3),
8 U.S.C. 1105(a)(3) [*sic*]," which they say "provides that
deportation shall automatically be stayed upon filing a
petition for review in the Circuit Court of Appeals." This
contention is patently frivolous, because it relies on the
presumptively automatic stay contained in the pre-1996
statute that, as *Nken* explained, was explicitly repealed more
than 25 years ago. 556 U.S. at 424–25. Equally frivolous
under *Nken* is Petitioners' related assertion that the
constitutional guarantee of due process requires that they be
granted an automatic stay of removal. Petitioners provide no
basis for concluding that the Due Process Clause requires
application of a more generous standard than the "traditional
test for stays" described in *Nken*. 556 U.S. at 433 (citation
omitted).

With respect to the crucial factor of a likelihood of
success on the merits, Petitioners' stay motion merely
asserts, in conclusory fashion, that their "appeal will raise
substantial and novel issues of law as to whether the BIA
applied the law correctly to this case." On its face, this
unexplained assertion manifestly falls far short of what *Nken*
and *Leiva-Perez* require. Petitioners' motion does not even

bother to say anything about what those supposedly meritorious legal issues might be, and it therefore made no attempt to establish a "substantial case on the merits" with respect to any such points. *Leiva-Perez*, 640 F.3d at 970. In the absence of any such threshold showing on the merits, Petitioners' motion fails to carry their burden to "justify an exercise" of "judicial discretion" in their favor. *Nken*, 556 U.S. at 433–34; *see also Leiva-Perez*, 640 F.3d at 968 (holding that, "in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits").

Petitioners' showing with respect to irreparable harm is likewise insufficient. Given that, under the post-1996 INA, an alien's petition for removal will no longer "abate[] upon removal," *Nken* held that it is "plain that the burden of removal alone *cannot* constitute the requisite irreparable injury." 556 U.S. at 435 (emphasis added). Rather, an alien seeking a stay of removal "must show that there is a reason specific to his or her case, as opposed to a reason that would apply equally well to all aliens and all cases, that removal would inflict irreparable harm." *Leiva-Perez*, 640 F.3d at 969; *see also Nken*, 556 U.S. at 438 (Kennedy, J., concurring) (explaining that "there must be a *particularized*, irreparable harm beyond mere removal to justify a stay" (emphasis added)). Moreover, the alien "must show that an irreparable injury is the *more probable or likely* outcome." *Leiva-Perez*, 640 F.3d at 968 (emphasis added).

No such showing has been made in Petitioners' motion. Although Petitioners contend that "substantial immigration equities" weigh in their favor, their motion makes no effort to spell out what those equities are. Even if we generously assume that this comment should be construed as referring to the same asserted probability of harm that they asserted in

the proceedings before the agency, we conclude that Petitioners have not shown that such an alleged future harm is likely. *See Leiva-Perez*, 640 F.3d at 969 (holding that consideration of the "likelihood" of the underlying merits claim of "physical danger" if the alien is removed "should be part of the irreparable harm inquiry" and should be "determined *apart* from merits issues such as whether any physical abuse would be on account of a protected ground for asylum and withholding purposes, or whether the alien is barred from relief as a criminal alien" (emphasis added)). Assessing the likelihood of future harm independently for purposes of the irreparable-harm prong of the *Nken* standard, we conclude that Petitioners have failed to show that they are likely to face such harm. As the IJ persuasively noted, since leaving Peru, "no threats have been received in the United States," and Petitioners' "family in Peru has not been threatened."

Petitioners' motion asserts that they have a "right to live with [their] family in [their] adopted country," but that is merely another way of saying that Petitioners will be harmed, as a family, by their removal from the advantages of life in the United States, and *Nken* is clear that such removal alone does not establish the requisite particularized irreparable injury. To the extent that Petitioners contend that their removal will separate them from Rojas-Espinoza's three siblings who are in the United States, that factor is entitled no weight, given that those siblings are *themselves* in removal proceedings and Petitioners have made no showing that those siblings will be allowed to remain in the United States. And although Petitioners contend that their removal to Peru would moot this case, they have not made the requisite showing that, if their petition for review is granted, this court cannot provide *any* "effective relief." *Del*

*Cid Marroquin v. Lynch*, 823 F.3d 933, 936 (9th Cir. 2016); *see also Leiva-Perez*, 640 F.3d at 969.

Petitioners' failure to make any sufficient showing of irreparable injury dooms Petitioners' stay motion. As we explained in *Leiva-Perez*, "*Nken* held that if the petitioner has not made a certain threshold showing regarding irreparable harm . . . then *a stay may not issue*, regardless of the petitioner's proof regarding the other stay factors." 640 F.3d at 965 (emphasis added). And when this failure of proof on irreparable injury is considered together with Petitioners' feeble showing on the merits, their stay motion is patently lacking in merit.

The largely threadbare nature of Petitioners' stay motion is all the more inexcusable, because this court's General Orders expressly allow aliens seeking a stay pending judicial review to file a "supplemental" motion for stay of removal. Recognizing that the exigencies of time might lead an alien to file a somewhat terse initial stay motion, General Order 6.4(c)(2) generously states that, "[i]f the initial motion for stay of removal or deportation fails to discuss the merits of the petition for review or to identify the potential hardships faced by the petitioner due to deportation or removal during the pendency of the petition, petitioner may, within 14 days from the filing of the initial motion, file a supplemental motion for stay." Petitioners nonetheless did not file any supplemental motion in this case, nor did they seek additional time within which to file such a supplemental motion. And even after the Government filed a written opposition pointing out the various ways in which Petitioners' motion plainly fell far short of their burden under *Nken*, Petitioners did not bother to file a reply, nor did they seek leave to file anything further in support of their stay request.

In short, Petitioners' stay motion wholly fails to make an adequate showing as to either the likelihood of success on the merits or as to irreparable injury. In the absence of such a showing, there is no basis for a stay of removal. *See Nken*, 556 U.S. at 434; *Leiva-Perez*, 640 F.3d at 968.

## C

The only remaining question is whether our analysis of Petitioners' request for a stay should be affected by the fact that, by the time that stay motion was presented to a panel of judges for decision, that motion was paired with the fully briefed merits of the petition for review. We conclude that, even considering the more developed record before us, a stay of removal is not warranted.

As an initial matter, we note that Petitioners' merits brief does not even arguably provide any supplemental information that might be said to establish a particularized showing of irreparable injury to Petitioners from the denial of a stay. As such, the more complete record before us does not cure the fatal deficiencies in Petitioners' showing as to irreparable injury. *See supra* at 13–15.

But even if we assume *arguendo* that Petitioners have made *some* threshold showing of irreparable injury, it nonetheless falls far short of showing "that the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez*, 640 F.3d at 970. As such, this case, at best, falls at the other end of the continuum we described in *Leiva-Perez*—meaning that, to obtain a stay, Petitioners must show both "a strong likelihood of success on the merits *and* that the public interest does not weigh heavily against a stay." *Id.* (emphasis added). Our preliminary review of Petitioners' merits brief does not persuade us that they have now made a

"showing of a strong likelihood of success on the merits."[1] *Id*. at 971.  But in all events, we conclude that the public interest "weigh[s] heavily against a stay," and that Petitioners have not made a sufficient showing on the merits to overcome the heavy weight of that public interest factor. *Id*.

The Supreme Court acknowledged in *Nken* that "there is a public interest in preventing aliens from being wrongfully removed."  556 U.S. at 436.  Accordingly, to the extent that Petitioners have made *some* showing as to a likelihood of success, there would be a commensurate public interest in avoiding that erroneous removal.  But in our preliminary view Petitioners have not made a strong showing of a likelihood of success on the merits, and so the risk of a removal that might ultimately be judged erroneous is therefore somewhat limited here.  And, as we have explained, Petitioners also have not shown that "they are likely to face substantial harm" if erroneously removed to Peru, nor have they shown that, if their petition for review is granted, they would not "be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal."  *Id*. at 435–36. Petitioners thus have made, at best, only a weak showing of the sort of public interest considerations that might weigh in favor of a stay.  By contrast, we conclude that there are countervailing public interest considerations that weigh decidedly against a stay in this case.

*Nken* reaffirmed that "[t]here is *always* a public interest in prompt execution of removal orders: The continued

---

[1] We emphasize that we have not yet decided the ultimate merits of this case, which is not scheduled for argument and submission for decision until December 2, 2025.

presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permits and prolongs a continuing violation of United States law." 556 U.S. at 436 (emphasis added) (simplified). Furthermore, this "interest in prompt removal may be heightened by the circumstances as well," including if the alien "has substantially prolonged his stay *by abusing the processes provided to him*." *Id*. (emphasis added). That is precisely what has occurred here, and it weighs decisively in favor of denying a stay of removal to Petitioners.

As we have noted, in seeking a stay in this court, Petitioners filed nothing beyond their barebones initial stay motion, which consisted of two pages containing a mixture of conclusory and frivolous arguments. *See supra* at 12–13. They did not bother to file any supplemental motion, as allowed by our General Orders, and even when the Government filed an opposition noting the patent deficiencies in their stay motion, they neither filed a reply nor later did they seek leave to supplement their motion. In so doing, Petitioners successfully exploited a defect in this court's internal procedures and thereby secured an unwarranted stay of their removal for the last 10 months— and for a full seven months after the Government filed its opposition.

Specifically, merely by filing their barebones stay motion, Petitioners secured an automatic administrative stay, pending resolution of that stay motion, by virtue of this court's General Order 6.4(c)(1). *See* Ninth Cir. Gen. Order 6.4(c)(1) ("Upon the filing of an initial motion or request for stay of removal or deportation, the order of removal or deportation is temporarily stayed until further order of the Court."). Thereafter, consistent with what has become the widespread, if not standard, practice of this court's internal

operations, Petitioners' opposed stay motion was held by the Clerk's Office until it could be presented to the merits panel that would be assigned to this matter after the completion of merits briefing.**2**    The result is that the supposedly "temporary" stay that Petitioners obtained with their threadbare (if not frivolous) stay motion remained in place

---

[2] Between 2005 and April 2019, our General Orders provided that, upon the filing of a pre-merits-briefing motion for a stay of removal, "[a] briefing schedule will not be set until the motion for stay is resolved," thereby ensuring that such a pre-briefing motion would generally be decided in short order by an available motions panel. *See* Ninth Cir. Gen. Orders 6.4(c)(1) (2012 ed.) (noting that this provision had last been amended in Sept. 2005); *see also* Ninth Cir. Gen. Orders 6.4(c)(1) (2018 ed.).    Effective April 1, 2019, however, this language was removed, thereby allowing merits briefing to go forward while the motion for a stay was still pending. *See* Ninth Cir. Gen. Orders 6.4(c)(1) (2020 ed.); *see also* Ninth Cir. Gen. Orders 6.4(c)(6) (2024 ed.) (expressly adding language, effective June 21, 2023, confirming that "[a] briefing schedule will be established upon the filing of a petition for review, whether or not a motion for stay of removal is filed").    The inevitable result was a widespread practice of holding stay motions until the completion of merits briefing and assignment to a merits panel.    And given that, by the time the matter is assigned to a merits panel, the disposition of the entire matter is only 12–14 weeks away, hundreds of panels (as indicated by a Westlaw search) have chosen to decide any still-pending stay motion at the same time that the merits are decided. *See*, *e.g.*, *Haro Mendoza v. Bondi*, 2025 WL 518147, at *1 n.1 (9th Cir. 2025) (denying the petition for review on the merits and denying the stay motion "as moot"); *Elias Cruz v. Barr*, 793 F. App'x 636, 637 (9th Cir. 2020) (same).    Indeed, in a very large number of cases, we have denied the petition for review and, after stating that the "temporary stay of removal [under General Order 6.4(c)(1)] remains in place until issuance of the mandate," we have then stated that the stay motion is "otherwise denied." *See*, *e.g.*, *Fu v. Garland*, 848 F. App'x 751, 752 (9th Cir. 2021).    Of course, there is no meaningful sense, in such cases, in which the stay motion can be said to have been "denied"; on the contrary, because the "temporary" stay remained in effect all the way through the disposition of the appeal, the stays in such cases were, for all practical purposes, *granted in full*.

for a full seven months over the Government's objection. Regardless of whether Petitioners intended or foresaw that their near-frivolous stay motion would parlay them into such an extended stay of their removal, the reality is that, objectively, they have "substantially prolonged [their] stay by abusing the processes provided to [them]." *Nken*, 556 U.S. at 436.

The public interest in putting a prompt end to Petitioners' misuse of our stay processes is not in any way mitigated by the fact that this court itself erred in creating the process that Petitioners succeeded in using to obtain a 10-month "temporary" administrative stay of their removal. On the contrary, the *ultra vires* nature of that process weighs heavily in favor of denying Petitioners any *further* stay of their removal.**[3]**

Precisely because "[a]dministrative stays"—such as the automatic temporary stay granted by our General Order 6.4(c)(1)—"do not typically reflect the court's consideration of the merits of the stay application," such "an administrative stay is supposed to be *a short-lived prelude* to the main event: a ruling on the motion for a stay pending appeal." *United States v. Texas*, 144 S. Ct. 797, 798–99 (2024) (Barrett, J., concurring in denial of applications to vacate stay) (emphasis added). As we have explained, a "temporary stay" or "administrative stay" is "*only* intended to preserve the status quo *until* the substantive motion for a stay pending

---

[3] Despite the frequency with which panels of this court have combined rulings on stay motions with rulings on the merits, we have never before today considered the lawfulness of that practice in a published decision. *See United States v. Marin*, 90 F.4th 1235, 1240 (9th Cir. 2024) ("[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (citation omitted)).

appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) (emphasis added); *see also National Urban League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020) (stating that, under *Doe #1*, "distinct legal analyses" apply to "an administrative stay and a motion for stay pending appeal": "When considering the request for an administrative stay, our touchstone is the need to preserve the status quo," and "[w]e defer weighing the *Nken* factors until the motion for stay pending appeal is considered" (footnote omitted)). Accordingly, to eliminate "the risk that a court will avoid *Nken* for too long," an "administrative stay should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal." *United States v. Texas*, 144 S. Ct. at 799 (Barrett, J., concurring).

Here, the extended stay that Petitioners have already obtained flagrantly violates these principles. Once the stay motion in this case was fully briefed in February 2025, "the court [was] equipped to rule," and "its obligation to apply the *Nken* factors [was] triggered." *Id*. But rather than present Petitioners' stay motion to the next available motions panel for decision, the Clerk's Office (consistent with our general internal practices) held the motion until it could be presented to a merits panel together with the fully completed merits briefing. As a result, by the time that the stay motion was presented to us for decision, the ostensible "administrative stay ha[d] effectively become a stay pending appeal," but without any consideration of the *Nken* factors. *Id*. at 800. Indeed, the 10-month stay that Petitioners obtained with their barebones motion was accomplished without *any* involvement of an Article III judge.

It is manifestly unlawful to allow a temporary administrative stay to be continued for such an undue length of time after an opposed stay motion has been fully briefed, much less to do so without any case-specific judicial involvement. *See Nken*, 556 U.S. at 433–34 (holding that granting an opposed stay motion requires application of the traditional stay factors in "an exercise of *judicial* discretion" (emphasis added)); *Doe #1*, 944 F.3d at 1223 (holding that a temporary administrative stay "is *only* intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits" (emphasis added)); *cf. United States v. Johnson*, 48 F.3d 806, 809 (4th Cir. 1995) (noting that the settled principle that substantive judicial functions "cannot be delegated to nonjudicial officers for resolution" does not "prohibit courts from using nonjudicial officers to *support* judicial functions, as long as a judicial officer retains and exercises ultimate responsibility"). Moreover, the practice of generally holding stay motions until they can be presented to the merits panel together with the completed merits briefing squarely violates *Nken*'s instruction that courts may not "reflexively hold[] a final order in abeyance pending review." 556 U.S. at 427. Under these principles, once the opposed stay motion in this case was fully briefed, it should have been presented by the Clerk's Office to the next available motions panel. And, going forward, that is the practice that must be followed in disposing of fully briefed opposed stay motions.

The public interest considerations in this case thus "weigh heavily against a stay." *Leiva-Perez*, 640 F.3d at 970. And because Petitioners have not made "a showing of a strong likelihood of success on the merits" and have not shown that particularized "irreparable harm is probable," *id*. at 971, they are not entitled to a stay of removal.

\*      \*      \*

Petitioners' opposed motion to stay removal (Dkt. No. 3) is denied. The temporary stay of removal entered pursuant to General Order 6.4(c)(1) is lifted, effective immediately.