**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 20 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARICRUZ MARISOL ROJAS-ESPINOZA; ROBERT DAVID SALVADOR-GOMEZ; DAVID ANGEL SALVADOR-ROJAS; KORINA SALVADOR-ROJAS,<br><br>　　　　Petitioners,<br><br>　v.<br><br>PAMELA BONDI, Attorney General,<br><br>　　　　Respondent. | No. 24-7536<br><br>Agency Nos.<br>A246-606-483<br>A246-606-482<br>A246-606-484<br>A246-606-485<br><br>**ORDER** |

**MURGUIA**, Chief Judge:
Dissent by Judge VanDyke

Upon the vote of a majority of nonrecused active judges, it is ordered that

this case be reheard en banc pursuant to Federal Rule of Appellate Procedure 40(c)

and Circuit Rule 40-3.  The order issued by the three-judge panel on October 24,

2025, which was previously stayed, is vacated.

FILED

FEB 20 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Rojas-Espinoza v. Bondi*, No. 24-7536

VANDYKE, Circuit Judge, dissenting from the grant of rehearing en banc:

Imagine, if you are able, the wonderful Circuit of Wackadoo. The attorneys are all wise, the judges are all zealous, and the law clerks are all above average. Everything is enlightened and efficient. But alas, there is one thing amiss in Wackadoo: the judges are simply too busy.

You see, the Circuit of Wackadoo covers a vast geographic area. The expansive territory is populated with highly litigious people. Lawsuits of all sorts fly fast and thick. And disappointingly, their elected leaders have enacted a handful of laws that many of the Wackadoo judges find deplorable. The enforcement of those benighted laws accounts for around one third of the Circuit's caseload. What to do? … What to do?

The astute judges of Wackadoo came up with a solution. After taking a hard look, they realized that their dockets were crowded with hundreds of requests for preliminary relief—appeals from parties seeking temporary restraining orders, preliminary injunctions, and stays pending appeal. These motions were inconvenient and time-consuming. Resolving the motions required the judges to address, albeit in an abbreviated manner, many of the same issues that would be involved in the subsequent merits decision in each case. This made for a great deal of redundant and inefficient judicial work.

So the judges of Wackadoo adopted a convenient, but unwritten, practice. Whenever a party made a request for any form of preliminary relief, the Circuit would automatically grant the requested relief as an "administrative stay" pending review. Then the Circuit would file away the technically unresolved motion for months or years, until some of its judges got around to reviewing the merits of the case. Then at that time, the judges could conveniently dust off the motion for preliminary relief to resolve it simultaneously with the merits decision.

The system worked beautifully … for the judges … at first. As it turned out, some of the ungrateful litigants in Wackadoo clung to the bothersome notion that preliminary relief is an extraordinary remedy and not a matter of right. Non-moving parties earnestly opposed the Circuit's reflexive grant of preliminary relief, arguing that the moving parties had not met their burdens of showing that circumstances justified the discretionary relief. And even when the court ultimately "denied" the motion for a stay or an injunction as part of its merits decision, non-moving parties were subjected to the Circuit's automatic administrative stay during the lengthy pendency of the case.

Worse, word started to get out. Pretty soon every Wackadoo litigant, no matter how frivolous their appeal might be, was filing a motion for preliminary relief. Which they got. Even if their motion was meritless, opposed, and ultimately denied, the Circuit's automatic-grant and deferred-review process would allow them

2

to secure a months- or years-long preliminary injunction or stay simply by filing the request.

In short order, the Circuit of Wackadoo's docket became more crowded than ever with *thousands* of utterly meritless motions for stays and injunctions. For the hardworking judges of Wackadoo, this only reinforced their steadfast belief that the automatic-grant and deferred-review process was now more essential to the orderly and efficient management of their docket than ever before.

* * *

Now to be clear, the Ninth Circuit is not the Circuit of Wackadoo. We don't reflexively grant preliminary relief in *all* cases. That would be crazy. We only do so in immigration cases.

Each year, immigration petitioners file several thousand appeals in the Ninth Circuit—more than half of all immigration appeals filed across the United States. United States Court of Appeals for the Ninth Circuit, *2024 Annual Report* 37 (2025), https://www.ca9.uscourts.gov/annual-reports/. In thousands of these cases, the petitioners file a motion to stay removal while their appeal is pending. And in thousands of these cases, the government opposes that motion. The statistics are hard to pin down precisely but, as best as our court can tell, the Ninth Circuit denies relief in over ninety percent of the immigration petitions involving an opposed stay

motion.  Put bluntly, in our circuit *the overwhelming majority* of the immigration cases involving an opposed stay motion are meritless.

With the probability of success so low, why is our immigration case volume so high?  Though we ultimately deny relief in all but a handful of immigration cases, the Ninth Circuit offers essentially all immigration petitioners something that can be just as valuable: more time.  Since 2019, the Ninth Circuit has automatically granted an administrative stay of removal to any immigration petitioner who requests one. These stays are granted and continued without regard to the merits of the petitioners' cases.  Nominally, these automatic stays are "temporary"—intended to preserve the status quo only long enough for the judges on our court to review whether the petitioner has demonstrated that the specific circumstances of the case warrant a stay.  In reality, our court has adopted the general unwritten practice of deferring any judicial review of stay motions for many months or even years, until the case is eventually assigned to a merits panel for a final disposition.  And when the government opposes the initial stay motion and argues that petitioners have not met their burden of showing that the circumstances warrant the extraordinary remedy of preliminary relief, our court does nothing to ensure that the opposed stay will be reviewed prior to the merits decision.

This case plainly illustrates how the Ninth Circuit's unwritten internal procedures for granting and extending stays of removal disregard Supreme Court

precedent and award automatic, extended stays of removal in utterly meritless immigration appeals.  The petitioners in this case filed a threadbare request for a stay of removal.  The government objected.  Even so, our court granted the petitioners an automatic stay that extended for ten months before any judge even considered the substance of their motion.  When a merits panel did finally receive and review the petitioners' stay motion, it found no possible basis to support the award of a stay.  And because the Supreme Court has clearly held that lower courts may not reflexively hold a stay order in abeyance pending review, the panel held that future stay motions must be referred to the court's motions panels for pre-merits review.

That holding—implementing the Supreme Court's clear requirement for timely and individualized judicial review of stay motions—prompted this sua sponte en banc call.  The en banc court is no doubt poised to maintain the Ninth Circuit's automatic-grant and deferred-review process, primarily motivated by the belief that our court simply lacks the capacity to conform to the stay procedures the Supreme Court requires.  But capacity constraints alone are not an excuse to ignore the Supreme Court's instructions.

This case is no anomaly.  En banc vacatur of the panel order will ensure that the Ninth Circuit's automatic-grant and deferred-review process will continue to produce the same indefensible outcomes in thousands of other immigration cases each year.  Because the vast majority of the underlying immigration petitions in our

5

circuit are meritless, almost all the automatic stays our court grants will go to petitioners who have no valid claim to remain in the United States. And because the government cannot obtain a pre-merits denial of a stay motion by filing an opposition, our court will continue to delay immigration enforcement by presuming that every petitioner is entitled to a stay of removal.

We would never tolerate a similar automatic-grant and deferred-review procedure for awarding preliminary relief in any other context. We shouldn't tolerate it here.

## I.

The Supreme Court has clearly proscribed the procedure for automatically granting and deferring review of stay motions that the Ninth Circuit utilizes in immigration appeals.

Prior to 1996, the Immigration and Nationality Act contained "a provision providing most aliens with an automatic stay of their removal order while judicial review was pending." *Nken v. Holder*, 556 U.S. 418, 424 (2009). But as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), "Congress repealed the presumption of an automatic stay" to "allow for more prompt removal." *Id.* at 424–25. In its place, Congress established the rule that the filing of an immigration petition "does not stay the removal of an alien … unless the court orders otherwise." *Id.* at 425 (quoting 8 U.S.C. § 1252(b)(3)(B) (2006 ed.)).

6

Congress also "lifted the ban on adjudication of a petition for review once an alien has departed" to allow judicial review to continue after an alien had been removed. *Id.* at 424.

Based on "Congress's decision" to "repeal … the automatic stay" provision and "to allow continued prosecution of a petition after removal," the Supreme Court in *Nken* held that courts were to review motions for stays of removal using "the traditional test for stays." *Id.* at 433, 435 (citation omitted). That traditional test requires courts to consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Within the immigration context, where the government is the opposing party, the third and fourth factors "merge" together into a single analysis of the public interest. *Id.* at 435. To assess these factors, our court has established "a 'continuum' in which the requisite showing on the merits depends upon the strength of the alien's showing of irreparable injury and the potential harm to the public interest." *Rojas-Espinoza v. Bondi*, 160 F.4th 991, 996 (9th Cir. 2025).

> [A] petitioner seeking a stay of removal must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships

7

tips sharply in the petitioner's favor.  As has long been the case, these standards represent the outer extremes of a continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified.

*Id.* (alteration in original) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011)).

In *Nken*, the Supreme Court also made clear that, when reviewing motions to stay removal, a court "may not resolve a conflict between considered review and effective relief by reflexively holding a final order in abeyance pending review." *Nken,* 556 U.S. at 427.  "A stay is an 'intrusion into the ordinary processes of administration and judicial review,'" *id.* (quoting *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)), and should never be considered or granted as "a matter of right, even if irreparable injury might otherwise result to the appellant," *id.* (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).  Instead, "the traditional stay factors contemplate individualized judgments in each case." *Hilton*, 481 U.S. at 777.  And it is the "party requesting a stay [who] bears the burden of showing that the circumstances justify" the extraordinary remedy. *Nken*, 556 U.S. at 433–34.

Based on these instructions from the Supreme Court, you would not expect to find a court reflexively holding a final order on a motion to stay removal in abeyance pending review.  To the contrary, you would expect courts to grant stays of removal only after conducting a considered review of the four traditional stay factors and

making an individualized judgment about whether the party requesting a stay had met their burden.

But not this court. Before 2019, "our General Orders provided that, upon the filing of a pre-merits-briefing motion for a stay of removal, '[a] briefing schedule will not be set until the motion for stay is resolved,' thereby ensuring that such a pre-briefing motion would generally be decided in short order by an available motions panel." *Rojas-Espinoza*, 160 F.4th at 1000 n.2 (first quoting Ninth Cir. Gen. Order 6.4(c)(1) (2012 ed.); and then citing Ninth Cir. Gen. Order 6.4(c)(1) (2018 ed.)). But in 2019, our court made two changes to this practice—one written, one unwritten.

First, in 2019 our court amended Ninth Circuit General Order 6.4(c), announcing a new rule that, "[u]pon the filing of an initial motion or request for stay of removal or deportation, the order of removal or deportation is temporarily stayed until further order of the Court." Second, now that petitioners could unilaterally trigger automatic administrative stays of removal, our court adopted the internal practice of holding technically unresolved stay motions within the Clerk's Office until merits briefing was completed and the case was assigned to a merits panel for final disposition. *Rojas-Espinoza*, 160 F.4th at 1000–01.

In practice, this automatic-grant and deferred-review process means that immigration stay motions within the Ninth Circuit are likely to first cross the desk of an Article III judge months or sometimes years after they are filed, long after an

9

automatic stay of removal has already been granted by court staff, and simultaneously with a panel's consideration of the merits of the immigration appeal. When the technically unresolved stay motions finally do reach the merits panel, "the disposition of the entire matter is only 12–14 weeks away, [and] hundreds of panels … cho[ose] to decide any still-pending stay motion at the same time that the merits are decided." *Id.* at 1000 n.2 (first citing *Haro Mendoza v. Bondi*, No. 23-1976, 2025 WL 518147, at *1 n.1 (9th Cir. 2025); and then citing *Elias Cruz v. Barr*, 793 F. App'x 636, 637 (9th Cir. 2020)). And in such merits decisions, panels frequently claim to "deny" the stay motion, even while inexplicably ordering "that the 'temporary stay of removal [under General Order 6.4(c)(1)] remains in place until issuance of the mandate.'" *Id.* (alteration in original) (quoting *Fu v. Garland*, 848 F. App'x 751, 752 (9th Cir. 2021)).

> [T]here is no meaningful sense, in such cases, in which the stay motion can be said to have been 'denied'; on the contrary, because the 'temporary' stay remained in effect all the way through the disposition of the appeal, the stays in such cases were, for all practical purposes, *granted in full.*

*Id.*

The Ninth Circuit's automatic-grant and deferred-review procedure is irreconcilable with the Supreme Court's instructions in *Nken*. Both the court's initial grant of the stay motion and our court's subsequent extension of the stay are definitively "reflexive" and granted as of right—every immigration petitioner who

requests a stay automatically receives one that extends at least until his case is assigned for a merits decision. *Nken*, 556 U.S. at 427. Both the stay and the extension of the stay are awarded before any judge has made an individualized judgment about whether the petitioner has met their burden under the traditional test for a stay. *Id.* at 433–34; *Hilton*, 481 U.S. at 777. And many immigration petitioners receive, as a form of *preliminary* relief, a stay that extends all the way through issuance of the mandate—even after a panel has fully considered the merits of the case and issued a written decision concluding that the petitioners' case *has no merit*.[1] While the Supreme Court anticipates that a stay of removal will only be granted when "the circumstances justify" the extraordinary remedy, in the Ninth Circuit we know—even before conducting our long-delayed review—that almost every recipient of our stays is a petitioner bringing yet another meritless case. *Nken*, 556 U.S. at 433–34.

---

[1] *E.g.*, *Miramontes Garcia v. Bondi*, No. 24-7345, 2025 WL 3442895, at *2 (9th Cir. Dec. 1, 2025); *Espinoza Garcia v. Bondi*, No. 25-1314, 2025 WL 2986475, at *1 (9th Cir. Oct. 23, 2025); *Cyrille v. Bondi*, No. 19-72955, 2025 WL 3281525, at *2 (9th Cir. Nov. 25, 2025); *Arriola-Rosales v. Bondi*, No. 17-71798, 2025 WL 2028293, at *2 (9th Cir. July 21, 2025); *Kojongian v. Garland*, 846 F. App'x 551, 551 (9th Cir. 2021); *Augustine v. Garland*, 846 F. App'x 556, 557 (9th Cir. 2021); *Izaguirre v. Bondi*, No. 24-620, 2025 WL 1554134, at *2 (9th Cir. June 2, 2025); *Alvarez Magallanes v. Garland*, No. 23-4219, 2024 WL 4200579, at *2 (9th Cir. Sep. 16, 2024); *Salazar-Noriega v. Garland*, No. 21-70618, 2023 WL 315339, at *3 (9th Cir. Jan. 19, 2023); *Coronado-Sanchez v. Garland*, No. 20-70206, 2022 WL 2287562, at *1 (9th Cir. June 24, 2022).

11

To compound its errors, our court's unwritten deferred-review procedures also effectively allocate the burden of proof to the government—granting and extending a stay unless the government makes an affirmative showing that an expedited decision is warranted. Our court's General Orders outline the government's three possible responses to a motion for stay of removal: (1) silence, (2) non-opposition, and (3) opposition. Ninth Cir. Gen. Order 6.4(c)(3), (5). If the government remains silent, "the absence of a timely response will be treated as a notice of non-opposition." Ninth Cir. Gen. Order 6.4(c)(5). If the government files a statement of non-opposition to the stay motion, "the temporary stay shall continue in effect during the pendency of the petition for review," until the government moves to lift the stay, or until further order of the court. *Id.*

But when the government files a timely opposition to the stay motion, as it has done in thousands of cases, it would not be unreasonable to expect that opposition to have some effect. Ninth Cir. Gen. Order 6.4(c)(3). Not here. Instead, our court's unwritten deferred-review procedures treat opposed and unopposed stay motions *identically*—continuing the automatic stay and deferring review of either motion until the case is assigned to a merits panel. The government's oppositions frequently cite the standards articulated in *Nken* to the court and argue that immigration petitioners have not met their burden of showing that a stay of removal was justified under the traditional test for stays. But all the government's effort—

utilizing a briefing mechanism outlined by our General Orders—has neither triggered nor accelerated any pre-merits review of the opposed stay motions. Recognizing the statistical fact that the vast majority of underlying immigration petitions in our circuit are meritless and that petitioners bear the burden of demonstrating that their circumstances warrant a stay, one might anticipate that the government would have a bit more success.

Instead, in essentially every immigration case the Ninth Circuit's presumption in favor of a stay of removal wins, and the government loses. It is no answer to point to the fact that the government may file a motion to expedite review of the stay motion. This motion, if it makes a sufficient showing of a need for a prompt decision, could in theory earn the government the rare and highly coveted pre-merits review by a motions panel. But this option only serves to reinforce the point that our court's unwritten practice is to grant and extend an opposed stay motion unless the government files both an opposition and a motion to expedite including the required affirmative showing. Our court's allocation of a burden to the government to demonstrate that a stay motion is *not* required simply cannot be squared with *Nken*'s clear instruction that *petitioners* bear the burden of demonstrating that a stay is warranted. *Nken*, 556 U.S. at 433–34; *Hilton*, 481 U.S. at 777. Yet again, our court has the Supreme Court's standard backwards, with the result here being the reflexive award of long stays to most unmerited immigration petitioners.

13

If our court is truly too busy to review fully briefed opposed stay motions, our default rule should be denial of the extraordinary remedy of a stay until judicial review confirms the moving party has met its burden. The Supreme Court has made clear that stays of removal are not to be granted as a matter of right, that petitioners—not the government—bear the burden of demonstrating that stays are warranted, and that stays are to be granted and extended only when a judge has made an individualized judgment about whether the petitioner has met his burden under the traditional test for a stay. And the Supreme Court has expressly proscribed reflexively holding stay motions in abeyance pending final decision. When you combine this with our knowledge that the vast majority of the underlying immigration claims turn out to be meritless, there is no excuse in law or logic for our court's perverse practice of effectively handing out long "temporary" stays of removal like candy to every immigration petitioner who asks.

## II.

The opposed motion to stay removal at issue in the instant case nicely illustrates the problem, in large part because it's so typical. The Petitioners here filed a "threadbare" stay motion that entirely failed to demonstrate that the circumstance of their case warranted a stay of removal. *Rojas-Espinoza*, 160 F.4th at 998. The government opposed the stay motion, citing *Nken* to argue that Petitioners failed to meet their burden. *Id.* But simply because they had already

filed a conclusory and frivolous request for a stay, the Petitioners were granted an automatic stay for ten months before any judge reviewed their motion or the government's opposition. *Id.* at 1000. And if the original merits panel had treated this case like most panels have treated such cases, the Petitioners' "temporary" stay would have lasted many months longer—until the panel issued a decision denying their underlying claims on the merits *and* the mandate finally issued.

Petitioners—Maricruz Marisol Rojas-Espinoza, her domestic partner Robert David Salvador-Gomez, and their two minor children—are natives and citizens of Peru who unlawfully entered the United States in January 2023. *Id.* at 993. After the Department of Homeland Security initiated removal proceedings, Petitioners applied for asylum, withholding of removal, and relief under the Convention Against Torture. *Id.* An Immigration Judge ("IJ") denied their applications for relief and ordered them deported to Peru. *Id.* at 994. When Petitioners appealed to the Board of Immigration Appeals ("BIA"), the BIA upheld the IJ's denial of relief. *Id.*

In December 2024, Petitioners petitioned for review of the BIA's decision in this court and "moved for a stay of removal pending resolution of the petition." *Id.* at 994–95. Petitioner's stay motion was "barebones" and "consisted of two pages containing a mixture of conclusory and frivolous arguments." *Id.* at 1000. But simply by moving for a stay, Petitioners automatically received a "temporary administrative stay pending resolution of that motion." *Id.* at 995. In February 2025,

15

the government filed a timely opposition to the Petitioners' stay motion. *Id.* Though our General Orders allowed the Petitioners to file a reply to that opposition, they failed to do so. *Id.* Thus, the motion to stay removal was fully briefed by February 2025. *Id.*

But our court did not present the fully briefed opposed stay motion to the next available motions panel. *See* Ninth Cir. Gen. Order 6.2(a) (establishing monthly motions panels of judges). Instead, the Clerk's Office deferred any action on the motion for seven months while merits briefing was completed. *Rojas-Espinoza*, 160 F.4th at 995. The automatic stay of removal remained in effect all the while. *Id.*

In September 2025, the case was calendared for a merits panel, and both the stay motion briefs and the merits briefs were sent to the panel simultaneously. *Id.* This was the first time that any Article III judge reviewed the stay motion or the case. Applying the traditional test for stays outlined in *Nken*, the panel concluded that Petitioners had failed to meet their burden of showing that the specific circumstances of their case warranted the extraordinary remedy of a stay of removal. *Id.* at 997–99.

Why?

First, Petitioners functionally made no attempt to demonstrate a likelihood of success on the merits in their stay motion—"merely assert[ing], in conclusory fashion, that their 'appeal [would] raise substantial and novel issues of law as to

16

whether the BIA applied the law correctly to this case,'" without "bother[ing] to say anything about what those supposedly meritorious legal issues might be." *Id.* at 997. These bare assertions failed to establish a "substantial case on the merits." *Id.* (quoting *Leiva-Perez*, 640 F.3d at 970).

Second, Petitioners failed to show that their removal would result in any "*particularized*, irreparable harm beyond mere removal." *Id.* at 997–98 (quoting *Nken*, 556 U.S. at 438 (Kennedy, J., concurring)). Because "an alien seeking a stay of removal 'must show that there is a reason specific to his or her case, as opposed to a reason that would apply equally well to all aliens and all cases, that removal would inflict irreparable harm,'" the panel concluded that Petitioners failed to make a threshold showing of irreparable harm. *Id.* (quoting *Leiva-Perez*, 640 F.3d at 969).

Finally, the panel concluded that the public interest weighed heavily against a stay. *Id.* at 999–1002. In *Nken*, the Supreme Court made clear that "[t]here is *always* a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permits and prolongs a continuing violation of United States law." *Id.* (alterations in original) (quoting *Nken*, 556 U.S. at 436). This "'interest in prompt removal may be heightened' … if the alien 'has substantially prolonged his stay *by abusing the processes provided to him*.'" *Id.* at 1000 (quoting *Nken*, 556 U.S. at 436).

17

To evaluate if Petitioners prolonged their stay by abusing the court's processes, the panel had to consider the fact that both the Petitioners and the court contributed to the delay. Here, Petitioners secured an unwarranted stay of their removal "merely by filing their barebones stay motion." *Id.* Once they had triggered the automatic stay, Petitioners did not bother to file a supplemental motion or a reply to the government's opposition. *Id.* And in the merits briefing, Petitioners did not bother to file a reply brief or a supplemental brief when the opportunity was made available to them. "Petitioners successfully exploited a defect in this court's internal procedures and thereby secured an unwarranted stay of their removal for the last 10 months—and for a full seven months after the Government filed its opposition." *Id.*

But the court also played a substantial role in extending Petitioners' stay by automatically granting and holding the motion without "any case-specific judicial involvement" for many months. *Id.* at 1002. The panel concluded that "the practice of generally holding stay motions until they can be presented to the merits panel together with the completed merits briefing squarely violate[d] *Nken*'s instruction that courts may not 'reflexively hold[] a final order in abeyance pending review.'" *Id.* (second alteration in original) (quoting *Nken*, 556 U.S. at 427). The panel concluded that the "*ultra vires* nature" of the Ninth Circuit's automatic-award and deferred-review process "weigh[ed] heavily in favor of denying Petitioners any *further* stay of their removal." *Id.* at 1001.

18

Because Petitioners failed to make any showing that they were likely to succeed on the merits and failed to show that they were likely to face substantial harm if removed, the countervailing public interest in avoiding an erroneous removal was limited. *Id.* at 999. Thus, because the public interest weighed sharply in favor of removal, there was no place on the Ninth Circuit's "continuum" analysis where the balance of the traditional stay factors would favor granting a stay of removal. *See id.* Without showing any likelihood of success on the merits or any irreparable injury, Petitioners' motion simply offered "no basis for a stay of removal." *Id.* at 998 (first citing *Nken*, 556 U.S. at 434; and then citing *Leiva-Perez*, 640 F.3d at 968).

The panel denied the petitioners' motion for a stay of removal. *Id.* at 1002. To prevent the court from committing the same unwritten procedural errors in the future, the panel held that, "once the opposed stay motion in this case was fully briefed, it should have been presented by the Clerk's Office to the next available motions panel." *Id.*

### III.

I venture to say that not a single judge on our court would conclude that the stay motion in this case satisfied the Petitioners' burden under our traditional test for stays. Yet a majority of the judges on our court have now called en banc the panel's order denying the stay motion. Because the merits offer no reason for reversal, the call is necessarily directed at the panel's holding that, to bring our automatic stay

19

procedure into compliance with the Supreme Court's instructions in *Nken*, fully briefed opposed stay motions should be presented by the clerk's office to the next available motions panel. *Rojas-Espinoza*, 160 F.4th at 1002. But en banc review of this holding is not justified.

To be sure, our court receives an incredibly high number of immigration petitions. But our capacity challenges cannot justify ignoring the Supreme Court's instructions. The Ninth Circuit is not so busy that the only practical procedure for addressing opposed stay motions is (1) granting stays reflexively upon request, (2) ignoring the government's opposition without any individualized review of whether petitioners have met their burden under the traditional test, and (3) continuing stays through the merits stage without judicial involvement. While there may be legitimate concerns with the Ninth Circuit's caseload and capacity, it should be obvious that ignoring the Supreme Court's clear instructions in *Nken* is simply not a legitimate solution to those concerns.

It is particularly ironic to justify our automatic-grant and deferred-review procedures by pointing to the strain that the high volume of stay motions places on our court's capacity. Anyone who has watched the first ninety seconds of a YouTube video on game theory (or who has spent a year or two raising a child) would immediately recognize the circularity of this concern, because it is the Ninth Circuit's automatic-stay and deferred-review procedures themselves that perversely

incentivize the extraordinarily high volume of meritless stay motions. When you reflexively give a kid a cookie every time he asks for one, you can expect to hand out a lot of cookies. This is why the vast majority of experienced parents will tell you that distributing cookies is an "extraordinary remedy" that should not be available "as a matter of right." When any petitioner can automatically secure an extended stay of removal simply by filing a threadbare motion, regardless of its merits, you don't need a PhD in game theory to predict a tidal wave of such motions.

Our court's manifestly unlawful stay procedures no doubt strongly contribute to the very capacity crisis that we now use to justify maintaining those manifestly unlawful procedures. Evidently, the Ninth Circuit's internal dialogue sounds something like a judicial Oprah Winfrey, confused by her own popularity:

> We are … ("You get a stay!") … sincerely shocked … ("You get a stay!") … by the … ("You get a stay!") … number of … ("You get a stay!") … utterly … ("You get a stay!") … meritless … ("You get a stay!") … immigration petitions … ("You get a stay! And you get a stay! And you get a stay!") … that are filed … ("You get a stay!") … in our court. ("*Everyone* gets a stay!").

Right now, the Ninth Circuit offers more than half of the immigration petitioners in the nation an open tap of time to remain in the United States, no matter how meritless their claims might be. You don't even need to be that lucky to parlay a filing fee and an immigration attorney's flat rate into a stay of removal and delayed proceedings that last long enough for the next Democrat administration to administratively close your case. So while the political branches no doubt bear their

21

share of responsibility for much of the inefficacy of immigration enforcement, you can squarely blame this court for (proudly?) keeping thousands of removable aliens in the United States even though we all know almost all of them have no meritorious claim for relief from removal.

In the end, there is simply no justification for preserving our court's illegitimate and previously covert status quo rather than conforming our circuit's unwritten case-management practices to the Supreme Court's dictates. And while the Ninth Circuit may face unique capacity challenges as a consequence of its size and caseload, mere capacity pressures should never provide a basis for ignoring governing law.

## IV.

So what's next? Given the expected en banc panel draw, once this case goes en banc I expect it will shortly wither away on the vine. I predict that not even one judge will find a way to say that Petitioners' stay motion satisfied their burden, so the en banc court will simply deny the petition for a stay pending appeal and, with the panel order safely exterminated by operation of our recent en banc rules, our court will hope that this issue and our court's clandestine practice simply fades back into obscurity, away from public purview. By abrogating the panel's prior order, the en banc court will quietly seek to preserve the court's manifestly unlawful

automatic-grant and deferred-review procedure and insulate it from Supreme Court review.

But as long as the Ninth Circuit maintains our unwritten practice, thousands of immigration petitioners will secure months or years of extra time in the United States simply by filing frivolous stay motions in meritless cases. Nearly all the recipients of those extended "temporary" stays will eventually be denied relief on their utterly meritless claims. And no matter how frequently the government cites *Nken*, the traditional test for stays, or the petitioners' burden to our court, the government's opposition will not trigger a pre-merits judicial review.

Some might call that Wackadoo.