**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARICRUZ MARISOL ROJAS-ESPINOZA; ROBERT DAVID SALVADOR-GOMEZ; DAVID ANGEL SALVADOR-ROJAS; KORINA SALVADOR-ROJAS,<br><br>Petitioners,<br><br>v.<br><br>PAMELA BONDI, Attorney General,<br><br>Respondent. | No. 24-7536<br>Agency Nos.<br>A246-606-483<br>A246-606-482<br>A246-606-484<br>A246-606-485<br><br>ORDER |

Before: Mary H. Murguia, Chief Judge, and Kim McLane Wardlaw, Ronald M. Gould, Johnnie B. Rawlinson, Morgan B. Christen, Michelle T. Friedland, Eric D. Miller, Bridget S. Bade, Kenneth K. Lee, Holly A. Thomas, and Eric C. Tung, Circuit Judges.

Concurrence by Chief Judge Murguia
Statement by Judge Tung

Petitioners' opposed motion to stay removal (Dkt. No. 3) is DENIED. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Leiva-Perez v. Holder*, 640 F.3d 962, 964-65 (9th Cir. 2011). The temporary stay of removal entered pursuant to General Order 6.4(c) is lifted, effective immediately.

FILED

MAR 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Rojas-Espinoza v. Bondi*, No. 24-7536

MURGUIA, Chief Judge, concurring in the order denying petitioners' motion to stay removal:

I agree with the denial of petitioners' motion to stay removal. I write separately to respond to Judge Tung's statement.

Judge Tung's statement omits a crucial point: the lawfulness of the court's stay practice—carried out under a full-court-approved General Order that has been publicly in place since 2002—is not an issue the parties raised to the three-judge panel and is not an issue before this en banc court. Instead, the panel identified and resolved an issue that neither the petitioners nor the government presented. In doing so, the panel risked undermining the adversarial process and circumvented our long-standing procedures for raising such concerns.

The issue the panel raised—whether the court's method of handling stay motions in immigration cases is lawful—is one the court can and will address through its established internal procedures governing its administrative and policymaking responsibilities.

At any time, members of the court are free to take concerns regarding court procedures to the Court Executive Committee. This ensures that institutional policies reflect a deliberative process that accounts for all relevant procedural and legal considerations. Consistent with that practice, a review has already been initiated to reexamine the most efficient way to manage the court's enormous

immigration docket, including the court's stay-of-removal procedures. Any proposed changes to the court's procedures will be reviewed and decided by the full court.

The panel's order unilaterally disrupted the court's internal governance and policymaking structure by purporting to announce a change in long-standing internal procedure that was adopted and refined over time by the full court. The full court corrected this error by vacating the panel's order.[1] The en banc court is now properly focused on the matters *actually* before it: (1) the motion to stay removal and (2) the petition for review. Today's order addresses the first of those matters by denying the stay.

I do not address here the regrettable factual, procedural, and legal inaccuracies in Judge Tung's statement. The en banc court will resolve the issues before it, and

---

[1] Judge Tung relies on *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 443–44 (1946), to support the assertion that the panel properly considered the lawfulness of the court's procedure. Statement respecting the denial of motion to stay removal at 5 (Tung, J.). In *Murphree*, the Court acknowledged that procedural rules are not immune from judicial scrutiny. 326 U.S. at 444. However, the Supreme Court's consideration of a procedural rule was appropriate in *Murphree* because, unlike the parties here, the defendant in that case directly challenged the rule in question. *See id.* at 443. By contrast, neither party so much as mentioned our internal procedures prior to the panel's sua sponte declaration that they are unlawful. And, contrary to Judge Tung's suggestion, the Government did not initially raise our procedures to the three-judge panel. The Government briefed the issue **only** after the panel published its order and in response to the court's request for supplemental briefing as part of en banc proceedings.

the full court will examine its internal procedures as part of its long-standing administrative and policymaking responsibilities.

FILED

MAR 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Rojas-Espinoza v. Bondi*, No. 24-7536

TUNG, Circuit Judge, statement respecting the denial of motion to stay removal:

This case reflects the assertion of raw power by a majority of this court rather than the reasoned decisionmaking in accordance with law that the parties expect of us and that our judicial role demands.

A majority of this court granted en banc, resulting in the vacatur of a three-judge panel decision that had denied the petitioners' motion for stay and identified the unlawfulness of this court's practice of automatically granting stays of removal opposed by the government—stays that would last for the entirety of the appeal before the merits of the stay are ever considered (periods of time that could last months or years). *Rojas-Espinoza v. Bondi*, 160 F.4th 991, 1000–01 (9th Cir. 2025) (Nelson, Collins, and VanDyke, JJ.), *reh'g en banc granted, opinion vacated*, No. 24-7536, 2026 WL 483470 (9th Cir. Feb. 20, 2026); *see also Rojas-Espinoza v. Bondi*, No. 24-7536, 2026 WL 483470, at *2 (9th Cir. Feb. 20, 2026) (VanDyke, J., dissenting from the grant of rehearing en banc). The en banc panel today denies the petitioners' motion to stay removal, validating part of the three-judge panel's decision. But with respect to the unlawfulness of this court's practice of granting automatic stays, which the panel called out, the en banc panel is deafeningly silent. On a matter so consequential, and as judges whose job is to say what the law is, the en banc panel should have offered some explanation. Instead, we hear nothing.

\* \* \*

1

In this case, the petitioners had filed a motion for a stay of removal on December 13, 2024, that should have been denied soon after its filing. The motion, barebones in its presentation, was patently frivolous: it made no effort to explain the grounds for relief (merely stating that substantive issues of law required a stay); and it invoked an outdated statutory provision (authorizing automatic stays) that had long been repealed. *See* Petition for Review with Motion for Issuance of Order Staying Removal Pending Resolution of the Petition (Dkt. 3.1) at 2–3. The government opposed the motion. Instead of sending the motion to the next available motions panel for disposition, this court (through the Clerk's Office and without any involvement of an Article III judge) granted an automatic stay, without assessing the merits, and waited until after the merits briefing had been completed before sending the motion to the merits panel for disposition. Thus, the stay lasted until today—well over a year after petitioners filed their stay motion.

The court's practice of granting such prolonged automatic stays of removal, the panel explained, was "manifestly unlawful." *Rojas-Espinoza v. Bondi*, 160 F.4th at 1002. The Supreme Court has long admonished that stays of removal are "not a matter of right" (*Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted)); instructed that a court must not "reflexively hold[] a final order in abeyance pending review" (*id.* at 427); placed the burden on the applicant to show that a stay is warranted (*id.* at 433–34); and required that a court must apply the "traditional stay

2

factors" in each case (including asking "whether the applicant has made a strong showing that he is likely to succeed on the merits" and weighing the "public interest" among other factors). *Id*. at 426; *see also id.* at 438 (Kennedy, J., concurring) ("[C]ourts should not grant stays of removal on a routine basis.").

Nevertheless, our court has disregarded (and continues to disregard) these instructions in its implementation of an automatic-stay policy. In this court, prolonged stays of removal are issued virtually as a matter of right; the court reflexively grants stays pending the appeals process; it places the burden not on the applicant to show why a stay is warranted, but on the government to oppose the stay and to seek a more expedient resolution; and it does not assess any of the traditional stay factors, including the merits or the public interest, before granting the automatic stay. Our practice, simply put, lacks any legal justification.

The panel pointed all this out and ordered an end to the unlawful practice. In particular, the panel, in considering the "public interest" factor, quoted *Nken* and stated that "'[public] interest in prompt removal may be heightened by the circumstances as well,' including if the alien 'has substantially prolonged his stay *by abusing the process provided to him*.'" *Rojas-Espinoza*, 160 F.4th at 1000 (emphasis in original) (quoting *Nken*, 556 U.S. at 436). The panel considered whether the heightened need for prompt removal was mitigated by the fact that the court's own

3

"process" caused the "substantially prolonged" stay, and answered that the need was not mitigated, because the process itself was unlawful. *Id*. at 1001.

The panel held that, once the opposed stay motion was fully briefed, the motion and opposition should have been presented by the Clerk's Office to the next available motions panel. *Id.* at 1002. The panel ordered that, going forward, this court had to follow that practice (consistent with *Nken*)—instead of following its current practice (inconsistent with *Nken*) of granting a stay and presenting the stay motion to a merits panel until after the merits briefing has been completed, effectively prolonging the stay until after the merits have been decided. *Id.*

This court has now vacated the panel's decision. The en banc panel appears to have validated the three-judge panel's reasoning by swiftly issuing a terse order denying the petitioners' motion to stay removal. But the en banc panel says absolutely nothing about whether the court's practice of granting prolonged automatic stays is lawful. The three-judge panel carefully explained that this court's practice defies Supreme Court precedent. Yet not a single member of this en banc panel has tried in its order to rebut that conclusion. Meanwhile, the majority has successfully erased it as precedent. Under cover of darkness, the en banc court buried the body, and there is not much hope of a resurrection.

The Chief Judge's concurrence only makes matters worse. *First*, to avoid addressing the unlawfulness of this court's automatic-stay practice, the concurrence

4

asserts that the parties did not raise the issue. But that assertion is not accurate. In its opposition brief, the government argued that this court "must make an 'individualized judgment'" (Dkt. 12.1 at 5 (quoting *Nken*, 556 U.S. at 419)), and in a supplemental brief, it argued that "extended delay in adjudication" caused by the court's practice "'squarely violates' the Supreme Court instruction in *Nken* that courts may not 'reflexively' hold cases pending review" (Dkt. 35.1 at 5).

*Next*, the concurrence says that the panel committed "error" when it "unilaterally disrupted the court's internal governance and policymaking structure by purporting to announce a change in long-standing internal procedure[.]" **Conc. Op. 2.** But to call out the procedure's unlawfulness and to order compliance is not "error"—unless the procedure *is* lawful, a claim the concurrence refuses to defend. In the concurrence's view, it is the job of a "committee" (and not a court) to examine the procedure's validity. But that view is baseless. *See, e.g.*, *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 444 (1946) ("The fact that this Court promulgated the rules as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency."). Relegating this issue for "review" by a "committee" is to ensure its death. Perhaps that is the point.

*Finally*, the Chief Judge claims that my statement is rife with "regrettable factual, procedural, and legal inaccuracies[.]" **Conc. Op. 2.** I would be grateful to learn what they are. She concededly does not identify any.

5

\*   \*   \*

The en banc panel's total failure to engage with the panel's reasoning might be understandable. To do so might underscore the lawlessness of this court's practice governing stays of removal. But reasoned disagreement, explained in our decisions, is a hallmark of our system. We are not party functionaries of a politburo in which raw political power is asserted in backrooms and without reason. We are members of a *court*. We exercise judgment, not will, and we are bound by law. "[R]eason," as Lord Coke reminds us, "is the soul of law." *Milborn's Case*, 7 Co. Rep. 6b, 7a (1587). In acting without reason here, we risk losing our character as a court.

6